Approved: _____
SCOTT A. HARTMAN
Assistant United States Attorney

Before:  THE HONORABLE LISA MARGARET SMITH
         United States Magistrate Judge
         Southern District of New York

14 MJ 390

ORIGINAL

------------------------------------- X
                                      :   **SEALED**
UNITED STATES OF AMERICA              :   **COMPLAINT**
                                      :
            -v.-                      :   Violation of 18 U.S.C.
                                      :   §§ 371 and 473
JOSHUA COTTO,                         :
            Defendant.                :   COUNTY OF OFFENSE:
                                      :   WESTCHESTER
------------------------------------- X

SOUTHERN DISTRICT OF NEW YORK, ss.:

FRANK B. WOOD, being duly sworn, deposes and says that he is a Special Agent with the United States Secret Service ("USSS"), and charges as follows:

COUNT ONE

1. From at least in or about October 2013, up to and including on or about February 17, 2014, in the Southern District of New York and elsewhere, JOSHUA COTTO, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate and agree together and with each other to violate the laws of the United States.

2. It was a part and an object of the conspiracy that JOSHUA COTTO, the defendant, and others known and unknown, would and did buy, sell, exchange, transfer, receive, and deliver false, forged, counterfeited, and altered obligations of the United States, with the intent that the same be passed, published, and used as true and genuine, in violation of Title 18, United States Code, Section 473.

3. In furtherance of said conspiracy and to effect the illegal objects thereof, on or about February 17, 2014, JOSHUA COTTO, the defendant, provided a quantity of counterfeit currency to an individual in Queens, New York.

(Title 18, United States Code, Sections 371 and 473.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I have been personally involved in the investigation of this matter, and I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the offenses cited above, it does not include all the facts that I have learned during the course of the investigation. Where the contents of conversations of others are reported herein, they are reported in substance and in part.

5. On or about January 28, 2014, I arrested an individual in Yonkers, New York, who was found to be in possession of $9,900 in counterfeit United States Currency (the "CW"). In a post-arrest statement, the CW stated that he had purchased the counterfeit currency (the "January 28 Notes") from a female co-conspirator not named as a defendant herein ("CC-1"), and that he intended to sell it to another individual in Yonkers, New York. After his arrest, the CW agreed to assist myself and other law enforcement officers in investigating CC-1 and her suppliers of counterfeit currency.[1]

6. I have reviewed text messages between the CW and CC-1 dated February 17, 2014. In one of the text messages, the CW informed CC-1 that he wished to purchase additional counterfeit currency with a face value of $10,000. CC-1 sent a responsive message directing the CW to meet her later that evening at a particular hotel in Queens, New York (the "Queens Hotel"). The text messages have been preserved by law enforcement.

7. On or about February 17, 2014, I met with the CW prior to his meeting with CC-1. Agents searched the CW's person

---

[1] The CW is currently charged in a sealed complaint with possession of counterfeit currency, in violation of Title 18, United States Code, Section 472. It is expected that the CW will plead guilty to this charge, or related charges. The CW is cooperating with the Government in the hope of securing a more favorable sentence. The CW's information has been corroborated and shown to be reliable by, among other things, controlled purchases of counterfeit currency tape-recorded conversations between the CW and CC-1, some of which are described below.

and his vehicle and determined that he was not in possession of counterfeit currency or other contraband. I then provided the CW with authentic, pre-recorded buy money to use during the transaction with CC-1. I also equipped the CW with an audio transmitter so that law enforcement could monitor and record his conversation with CC-1.

8. Later that evening, agents maintained visual surveillance while the CW met with CC-1, the defendant, in the parking lot of the Queens Hotel. The meeting took place in the CW's vehicle.

9. After the meeting, I maintained constant surveillance of the CW until I met with him at a nearby location. There, the CW provided me with $7,700 in counterfeit currency that he had obtained from CC-1.

10. Shortly after the purchase of counterfeit currency, also on February 17, 2014, agents from the USSS approached CC-1 and placed her under arrest. After being read her Miranda rights, CC-1 waived those rights and provided the following information, in substance and in part:

   a. CC-1 admitted that she had sold counterfeit currency to the CW earlier in the evening with the understanding that the counterfeit currency in question would ultimately be passed as authentic.

   b. CC-1 further stated that, over the course of several months immediately preceding her arrest, she had purchased counterfeit currency from an individual, who has since been identified as JOSHUA COTTO, the defendant, and resold it to the CW and other individuals.

   c. CC-1 stated that her source of supply for counterfeit currency was presently in the particular room in the Queens Hotel (the "Hotel Room") and provided a physical description of him.

11. After interviewing CC-1, agents from the USSS went to the Hotel Room and located JOSHUA COTTO, the defendant, who matched the physical description that CC-1 provided of her supplier. After being read his Miranda rights, COTTO waived those rights and stated, in substance and in part, that he had supplied counterfeit currency to CC-1 and others over a period of several months, including earlier the night of February 17, 2014. COTTO further stated that he obtained the counterfeit currency from a particular individual (the "Source"). COTTO explained that he paid the Source 25% of face value for

counterfeit currency and then resold it at a price of 30% of face value.

WHEREFORE, the deponent respectfully requests that an arrest warrant issue for JOSHUA COTTO, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

_____
FRANK B. WOOD
Special Agent
United States Secret Service

Sworn to before me this
26th Day of February 2014

_____
THE HONORABLE LISA MARGARET SMITH
United States Magistrate Judge
Southern District of New York